## Rogan v. Board of Education of City of Middlesboro, et al.

(Decided November 15, 1921.)

### Appeal from Bell Circuit Court.

1.  Schools and School Districts—Power to Incur Indebtedness and Expenditures.—Under Authority conferred by chapter 53, Acts General Assembly 1920, page 224, the board of education of a city of the third class, with the approval of two-thirds of the voters thereof expressed at an election duly called and held for that purpose, may, in aid of the common schools of such city, by the issuance and sale of bonds of the board, incur an indebtedness in any amount within the limitations imposed by sections 157-158, Constitution.

2.  Schools and School Districts—Power to Incur Indebtedness and Expenditures.—The act, supra, makes and declares the indebtedness thus incurred an indebtedness of the board of education and not of the city, although by section 10 thereof it is made the duty of the common council of the city, upon the demand of the board of education, to annually levy and collect upon and from the property within the city's corporate limits such a tax as may be necessary to pay the interest on the bonds evidencing such indebtedness and create a sinking fund for their payment at maturity.

3.  Schools and School Districts—Power to Incur, Indebtedness and Expenditures.—As it is declared by the act the school bonds are to be regarded as obligations of the board of education alone, in ascertaining how far the board of education has become indebted, or the extent to which its indebtedness would be increased by the issuance and sale of the bonds, any indebtedness that the city may be owing cannot be taken into account. Only the board's own indebtedness can be considered in determining when the limit of indebtedness fixed by the Constitution is reached.

4.  Schools and School Districts—Power to Incur Indebtedness and Expenditures—Elections.—Under the provisions of the act of 1920

the board of education of a city of the third class has authority not only to order but also to cause to be held upon a day other than that of a regular election, and by officers of its appointment, an election for determining whether it shall issue and sell school bonds.

CHAS. A. WOOD and R. L. MADDOX for appellant.

T. G. ANDERSON for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellant, J. M. Rogan, a resident property owner and taxpayer of the city of Middlesboro, suing in his own behalf and that of others similarly situated, by this action in equity brought in the Bell circuit court against the appellees, board of education of that city, its several members and the city of Middlesboro, attacked the authority of the board, evidenced by a resolution duly passed, to call and cause to be held an election to enable the voters of the municipality to determine whether the board should issue and sell bonds to the amount of $150,000.00 for improving present and erecting additional school buildings and supplying other needs of the common graded and high schools of the city, such bonds to bear date December 1, 1921, be of the denomination of $1,000.00 each, to mature forty years after date, unless earlier retired by resolution of the board and the latter's payment of them, and to bear six per cent from date, payable semi-annually as provided by the attached coupons. The remedy sought in the action was an injunction, and by the prayer of the petition the circuit court was asked to enjoin the holding of the bond election by the appellee, board of education; that it be restrained from incurring the contemplated indebtedness by the issuance and sale of bonds or otherwise; and that the appellee, city of Middlesboro, also be restrained from levying and the appellee, board of education, from collecting any tax demanded of it by the latter for paying the interest on the bonds or providing a sinking fund for their payment at maturity.

At the appearance term of the court the appellees together filed a general demurrer to the petition, which, upon the submission of the action thereon, was sustained by the circuit court and the petition dismissed. The appellant excepted to these rulings and has appealed from the judgment manifesting same.

Middlesboro is a city of the third class and its corporate boundary is also that of the common school district for whose benefit the bonds in question are proposed to be issued. No controversy of fact is presented by the record. The petition concedes that in all steps taken by the appellee, board of education, in the matter of ordering, calling and advertising the election looking to the issuance of the bonds it has strictly complied with the provisions of chapter 53, page 224, Acts General Assembly, 1920, under which it claimed the authority, with the approval of the votes of two-thirds of the voters of the city, to incur the indebtedness contemplated by the issue and sale of the bonds. It is, however, contended by the appellant: First: That the appellee, board of education, is without power to incur any indebtedness other than as a component parts of the city of Middlesboro, which would make the proposed debt a debt of the city, and that this board is without power under the act to do, because the indebtedness of the city now is in excess of the limits fixed by sections 157-158 of the Constitution. Second: That an election for the purpose of determining whether a bond issue shall be authorized or not cannot be held at any other time than on the day of a general election, whereas that ordered by the appellee, board of education, is called and advertised to be held on a day other than the one fixed by law for the holding of a general election. Third: That the election in question was illegally ordered by the appellee, board of education, to be held by election officers of its own appointment, when, as argued, only the regular election officers appointed by the county board of election commissioners could legally act.

Regarding the first of these contentions it is deemed sufficient to say that authority to incur an indebtedness by a bond issue in the manner here proposed seems to be fully conferred by the provisions of the act, *supra,* upon a board of education of a city of the third class. It is true the indebtedness the board may thus incur is restricted by the act within the limits imposed by sections 157-158 of the Constitution of the state, but it nowhere declares that in ascertaining how far the board has or may become indebted, any indebtedness that the city may be owing shall be taken into account. The meaning is that only the board's own indebtedness shall be considered in determining when the limit fixed by the Constitution is reached,

By section 10 of the act, *supra,* the election for determining whether there shall be a bond issue is required to be ordered by the board of education. By it the bonds, designated as "school bonds," are required to be issued and sold and the proceeds by it distributed. By a further mandatory provision of section 10 it is made the duty of the city council, upon demand of the board of education, to levy and collect annually a tax sufficient to pay the interest on the bonds and create a sinking fund for their final payment at maturity, and to turn over such taxes, when so collected, to the board of education. From what has been said of the provisions of the act, *supra,* it is manifest, not only that the entire matter of incurring such an indebtedness as the appellant here complains of is committed solely to the board of education, but also that the indebtedness, when incurred, is intended to be and is an indebtedness of that board alone. Such has been the law with respect to cities of the second class since the passage of an act of 1912; and in numerous cases interpreting that act it was held that school improvement bonds issued by the board of education of a city of the second class were obligations of the board of education and not of the city, and, therefore, did not become a part of the city's indebtedness in determining whether the issuance thereof would exceed the constitutional limit of its indebtedness. Coppin v. Bd. of Ed. of City of Covington, 155 Ky. 387; Ex Parte City of Newport, 141 Ky. 349.

By the act of 1920, *supra,* the rule of law anounced in the cases, *supra,* was, as we have seen, made applicable to cities of the third class. This was recognized in Jones, Mayor v. Board of Education of City of Bowling Green, 191 Ky. 198, although in that case it was not thought proper to apply it because, among other reasons given in the opinion, the act of 1920 conferring upon boards of education in cities of the third class the same power to issue bonds as in cities of the second class was not passed until after that action was instituted. In the opinion it is, in part, said:

"So, too, must we hold here even if the legislature since this action was filed has conferred upon boards of education in cities of the third class the same power to issue bonds as in cities of the second class, which seems to have been done by chapter 53 of the 1920 Session Acts, since that act if it does have that effect and if it were available in this action, which does not seem possible,

confers upon the school board itself the power to do what it seeks by mandamus to compel the city council to do for it. In other words, if the city only can issue bonds for school purposes they are obligations of the city even if the school board is a separate and distinct corporation and has power as such to issue bonds then the bonds issued by it are its own obligations and not the city's.''

Whether in conferring upon the board of education such unlimited power in the matter of incurring indebtedness to the extent indicated, however beneficent the object, and putting upon the people of the city the burden of discharging it through the taxation of their property, the legislature acted wisely, is a question about which men well may differ, but it is evident that we are committed in this jurisdiction to the doctrine that it was competent for the legislature to confer the power by making the indebtedness that of the board of education and confining it within the limits fixed by the sections of the Constitution, *supra*. It therefore follows from what has been said that the chancellor did not err in refusing the plaintiff an injunction on the ground urged in his first contention.

Of the other two contentions little remains to be said. Both, in effect, were rejected in our discussion of the first, in which, referring to the provisions of section 10 of the act of 1920, it was substantially declared that they confide to the board of education full power not only to order but also to conduct, through officers of its appointment, the election, without any restriction of right to require it held on a day other than that of a general election. This authority in the board of education is recognized by section 155, Constitution, and repeatedly has been declared by this court. Clark v. Board, 164 Ky. 210; Crook v. Bartlett, 155 Ky. 311.

Judgment affirmed