## Clere v. Board of Education of the City of Ashland, et al.

(Decided November 10, 1925.)

### Appeal from Boyd Circuit Court.

1. Schools and School Districts—Act Fixing Smaller Debt Limitation than that Fixed by Constitution Not Invalid.—Ky. Stats., section 3235a-28, limiting bonded indebtedness of second class cities for

school purposes to 2 per cent. of value of taxable property therein, does not violate Constitution, section 158, limiting indebtedness of such cities to 10 per cent. of such valuation; such provision of Constitution merely fixing limit beyond which Legislature may not go in exercise of its power to authorize cities to incur indebtedness.

2. Schools and School Districts—Total Bond Issue of Second Class City for School Purposes Cannot Exceed Statutory Limit, whether Issued by Board of Education or City Itself.—Ky. Stats., section 3235a-28, limits total outstanding bond issue of second class cities for school purposes to 2 per cent. of value of taxable property therein, whether bonds are issued by board of education or by city itself, and where outstanding school bonds issued by board while city was of third class exceed limit, city cannot issue additional bonds.

OTTO C. GARTIN for appellant.

JOHN T. DIEDERICH and S. S. WILLIS for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

R. D. Clere, a citizen and taxpayer of Ashland, a city of the second class, brought this action against the board of education of the city of Ashland and the city of Ashland to enjoin a bond issue of $300,000.00 for school purposes. Being of the opinion that the issue was valid the circuit court sustained a demurrer to the answer and cross-petition of the city and to the original petition and entered an order dismissing the petition. Plaintiff has appealed.

It is admitted in the pleading that prior to September 16, 1924, the board of education of the city of Ashland certified to the general council that it was necessary to raise funds in excess of its annual revenue for school purposes and estimated the probable amount required for such purposes at $300,000.00. The certificate further stated that the above requirements were certified to the general council for the purpose of submitting to the qualified electors of the city at the next regular election the question whether bonds should be issued for such purposes. Upon receipt of the certificate from the board of education, the general council, on September 16, 1924, duly adopted an ordinance directing the submission to the qualified voters of the city at the regular annual election to be held in November, 1924, the question whether bonds in the sum of $300,000.00 should be issued for school purposes. At that election 4,748 votes were

cast in favor of, and 780 against, the bonds. Thereafter, the board of education prescribed the form of the bonds, the maturities, rate of interest, and other details, and the general council passed an ordinance in accordance with the board's directions.

It is conceded that the city of Ashland has outstanding bonds for school purposes aggregating the sum of $466,000.00 of which $320,000.00 are obligations issued by the board of education prior to the time Ashland became a city of the second class. The city itself has outstanding only $146,000.00 of school bonds, with $35,851.36 in the sinking fund for their redemption. The total bonded indebtedness of the city of Ashland for all purposes is $1,502,000.00. The taxable value of the property of the city, according to the 1923 assessment, is $20,355,232.00.

The principal ground on which the validity of the proposed bond issue is assailed is that it will exceed the limit fixed by the following provision of section 3235a-28, Kentucky Statutes:

> "No submission of the question of issuing bonds hereunder shall be had prior to the regular election in November, 1913, and the total outstanding issue of bonds for school purposes, including bonds already issued, shall never exceed two per centum (2%) of the value of the taxable property of the city, to be estimated by the assessment next before the last assessment previous to the incurring of the indebtedness."

On the other hand, the board of education and the city take the position that the foregoing provision of the statute is unconstitutional, or, if constitutional, that it applies only to bonds issued by the city of Ashland for school purposes, and not to the bonds issued by the board of education under previous charters.

Omitting certain provisions not material to this controversy, section 158 of the Constitution is as follows:

> "The respective cities, towns, counties, taxing districts and municipalities shall not be authorized or permitted to incur indebtedness to an amount, including existing indebtedness, in the aggregate exceeding the following named maximum percentages on the value of the taxable property therein, to be estimated by the assessment next before the last

assessment previous to the incurring of the indebtedness, viz.: Cities of the first and second classes, and of the third class having a population exceeding fifteen thousand, ten per centum (10%)."

The argument is that this provision impliedly authorizes a city of the second class to incur an indebtedness not exceeding 10% of its taxable property, and that, if the legislature may limit the school indebtedness to 2%, it may limit the indebtedness of all other departments and thereby defeat the purpose of the provision. It must not be overlooked that every municipality is the creature of the legislature, and that were it not for the provision in question and other debt limiting provisions in the Constitution the power of the legislature would be absolute and supreme, and it could authorize a city of the second class to incur an indebtedness in any amount up to, or beyond, the limit fixed. There is nothing in the provision that requires the legislature to empower a city to go to the limit or that gives that power to a city without legislative action. It simply fixes a limit beyond which the legislature may not go, and leaves intact the already existing power to provide how far a city may go within that limit. In other words, the provision is simply a limitation on the legislative power and not a grant of power to the municipality. Dillon on "Municipal Corporations," volume 1, section 191; Robertson v. Staunton, 104 Va. 73; State v. Common Council, 96 Wisconsin 73; Hunter v. Pittsburg, 207 U. S. 161, 52 L. ed. 151. It follows that the limitation fixed in the act is not violative of the Constitution.

But the point is made that a large portion of the school indebtedness was incurred when Ashland was a city of the third class and that this indebtedness is the debt of the board of education and not of the city and therefore should not be considered in determining whether the proposed indebtedness will exceed the limit of 2%. The language of the act is, "and the total outstanding issue of bonds for school purposes, including bonds already issued, shall never exceed 2 per centum (2%) of the value of the taxable property of the city." This language does not purport to deal only with bonds issued by the city. It is broad and comprehensive, and limits the total outstanding issue of bonds for school purposes without regard to whether they are issued by the board of education or by the city itself. As the out-

standing school bonds already exceed the limit fixed by the statute, it follows that the city is without power to issue the bonds in question, so long as that limit remains in force. In view of the inadequacy of the school facilities of Ashland we regret this conclusion, but the Constitution and statute are plain, and the legislature alone has the power to relieve the situation.

Judgment reversed and cause remanded with directions to enjoin the issue of the bonds so long as the statute fixing the limit at 2% of the taxable property of the city remains in force.

Whole court sitting.